UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-550-H

DEBBIE EVANS                                                             PLAINTIFF

V.

THE HARTFORD                                                  DEFENDANT

**MEMORANDUM OPINION**

This case involves The Hartford's denial of long-term disability benefits of its insured, Debbie Evans. Ms. Evans has not worked since April 29, 2004. Hartford initially found Ms. Evans permanently disabled and paid her long-term disability benefits for over four years. However, on May 13, 2008, Hartford notified Ms. Evans that she was no longer disabled under her insurance plan's terms. Ms. Evans appealed the decision at Hartford without success and has filed this action to reverse Hartford's decision and reinstate her long-term disability benefits with back pay and interest. At this time, both parties have moved the Court for summary judgment. The Court has carefully considered the administrative record and determined that Hartford's decision was arbitrary and capricious. Therefore, the Court will grant judgment in favor of Ms. Evans.

**I.**

Ms. Evans suffers from numerous significant medical conditions. Primarily, Ms. Evans has urinary cystitis due to radiation,[1] hypertension, hypothyroidism, multiple deep vein

---

[1] Urinary cystitis is a term for recurrent infections and irritations of the lower urinary system.

thrombosis, recurrent cellulitis,[2] recurrent bacteremia,[3] lymphedema,[4] episodes of septicemia[5] and chronic back, joint and knee pain due to a multilevel degenerative disc disease and mild facet arthritis. In addition to these on-going conditions, Ms. Evans has a history of uterine cancer treated by radiation, of which there is no evidence of recurrence. It is generally agreed that Ms. Evans cannot sit for extended periods of time without an opportunity to reposition herself and is unable to stand or walk for more than 30 minutes at a time.

Prior to becoming disabled, Ms. Evans worked as an Area Operations Manager for BB&T Bank. In April of 2004, however, Ms. Evans left her job on sick leave and never returned. She filed for disability benefits with Hartford and those benefits were approved on October 30, 2004. At the time this determination was made, Hartford noted Ms. Evans' limitations as follows: "[Evans] has to be able to change positions frequently, states that every time [she returns to work] the cellulitis comes back . . . symptoms: severe edema in legs, significant pain, redness, induration [and] fever." (Administrative Record ("A.R.") at 105 (DN # 12)). Based on these limitations and the advice of her primary care physician, Dr. Suzanne Pica, Ms. Evans was granted long-term disability.

As a part of her policy requirements, Ms. Evans filed for Social Security Disability ("SSD"). Initially, the Social Security Administration ("SSA") denied her claim. However, on February 26, 2007, an ALJ determined that she was disabled and Social Security benefits have

---

[2] Cellulitis is a potentially life-threatening bacterial skin infection that can cause significant pain.

[3] The presence of bacteria in the blood stream.

[4] Swelling of the arms or legs caused by a blockage in the lymphatic system.

[5] Blood poisoning.

2

been paid since that date.

In 2008, Hartford began re-examining Ms. Evans' claim. They received medical records from her pain management physician, Dr. Terry Troutt, indicating that injections into Ms. Evans' back decreased her back pain by nearly seventy percent. Given this positive medical record, Hartford sent letters to Drs. Troutt and Pica to inquire about Ms. Evans' physical limitations. The letters included the following paragraph and asked the doctors to sign if they agreed:

> No sitting longer than 1 to 3 hours at a time without the ability to get up and stretch or change positions. No more than occasional standing or walking (1-2 hours total per workday). No repetitive lifting, carrying, pushing or pulling greater than 10 pounds occasionally. She can perform frequent to constant fingering, feeling and/or handling (bilateral upper extremities). She is able to sit at a table or desk with her arms supported on the arms of a chair or on a table.

(A.R. at 273-276). Dr. Pica signed the letter indicating her agreement with the paragraph. (A.R. at 265). Dr. Troutt signed the letter after changing the first sentence to indicate no sitting longer than 1 hour without the ability to change position. (A.R. 257). Based on these responses, Hartford denied Ms. Evans' continued long-term disability.

Ms. Evans immediately appealed Hartford's decision. Importantly, Ms. Evans submitted letters from Drs. Troutt and Pica to explain their intention in signing the letter from Hartford. Dr. Pica wrote in no uncertain terms that Ms. Evans is unable to return to work and that Dr. Pica misunderstood the letter from Hartford. She believed that Hartford was inquiring if Ms. Evans was physically capable of doing those tasks *at all*, not if Ms. Evans was capable of doing those tasks 40 hours per week, 50 weeks per year. Dr. Troutt also sent an additional letter to Hartford to clarify her position. While she did not expressly specify whether she believed Ms. Evans could hold a full-time job, she very clearly detailed what she believed Ms. Evans' limitations to be:

3

> She has ongoing functional limitations that limit her ability to sit no more than an hour at a time without the ability to change positions in the recumbent and supine position to improve her pain regarding facet joint mediated pain, SI joint dysfunction, and the myofascial pain. She has the inability to lift, push, or pull greater than 10 lbs on occasional basis. She does not have the capacity for stair climbing except on an occasional basis. She does not have the ability to stand or walk greater than 30 minutes at a time without the ability to sit for 30 minutes. She does not have the abilities for crawling, kneeling, stooping, crouching, running, or jumping. No vibratory exposure to the lumbosacral spine. No pulling or pushing greater than 5 lbs on an occasional basis. No repetitive bending or twisting of the waist.

(A.R. at 192). Dr. Troutt does not indicate that Ms. Evans would be capable of performing a full-time job and states that these restrictions will likely be on a permanent basis. Additionally, when Hartford spoke with Dr. Troutt she indicated that the Ms. Evans' condition had not significantly changed during her treatment.

On appeal, Hartford hired two doctors to review Ms. Evans' medical records and determine her ability to return to work. These doctors never personally examined Ms. Evans. They reviewed her records, one doctor spoke with Dr. Pica and one spoke with Dr. Troutt. After reviewing the records, the doctors listed Ms. Evans' medical conditions and concluded, without much explanation, that she was fully-capable of returning to work at a sedentary job. Based on these reviews and Hartford's interpretations of Dr. Troutt's records and statements, Hartford denied Ms. Evans' appeal. Ms. Evans then brought this action to reverse Hartford's denial of her long-term disability benefits. Ms. Evans has not returned to work.

## II.

This Court has significant experience in reviewing disability denials made by ERISA plan administrators. The Court reviews an administrator's decision under an arbitrary and capricious standard where the plan grants the administrator discretion in the decision making

process. *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1012 (6th Cir. 1996) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). Although Ms. Evans disputes whether the plan provides administrator discretion, the policy language is clear: "The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the policy. The plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (A.R. at 27). Contrary to Ms. Evans' argument, there is no requirement that the policy specifically state that administrator decisions will be reviewed under the arbitrary and capricious standard. Rather, the policy need only put the insured on notice that the administrator has discretion in making its decision. *See Noland v. Prudential Ins. Co. Of Am.*, 187 Fed. Appx. 447, 452 (6th Cir. 2006) (finding that policy language stating that the insurance company "determines" whether the conditions of disability have been met grants discretion such that the arbitrary and capricious standard applies).

      The arbitrary and capricious standard is the most deferential form of judicial review. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2002). So long as the administrator's decision "is the result of a deliberate, principled reasoning process and . . . is supported by substantial evidence," the Court will uphold it. *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). However, certain factors should be considered in reviewing an administrator's decision. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292-293 (6th Cir. 2005). Although these factors do not alter the standard of review, they must be accounted for in determining if the administrator's decision was arbitrary and capricious. *Id.* There are at least three factors involved in this case that require the Court to

closely examine the decision made by Hartford: (1) there was a conflict of interest because Hartford was both the administrator deciding if benefits were owed and the insurance company paying those benefits; (2) the SSA had found Ms. Evans totally disabled in contradiction to Hartford's determination; and (3) Hartford relied on a file review of Ms. Evans' medical records as opposed to a physical examination of Ms. Evans herself. *Id.* at 292-295. Keeping these factors and the arbitrary and capricious standard in mind, the Court turns to a review of Hartford's decision.

### III.

Hartford found Ms. Evans totally disabled from 2004-2008. Hartford does not contend that this determination was, at any time, incorrect. Rather, Hartford asserts that Ms. Evans' physical condition significantly improved in 2008 to the point that she is now capable of holding a full-time job. Thus, if Ms. Evans' condition remains significantly the same, if not worse, than her condition in 2004 when the initial disability determination was made, it would be strong evidence that Hartford's recent decision was arbitrary and capricious.

### A.

Hartford primarily relies on Dr. Troutt's medical chart indicating that Ms. Evans' back pain was seventy percent improved as a result of injection therapy as evidence that her medical condition had improved in 2008. However, Dr. Troutt does not assert that any improvement in pain would be long-term or that the improvement in pain would ease Ms. Evans' physical limitations. In fact, Dr. Troutt informed Hartford that Ms. Evans' condition had not significantly changed. Dr. Troutt specifically listed Ms. Evans' limitations at that time. These limitations are nearly identical to the limitations listed by Hartford when it determined that she was permanently

disabled in 2004. Thus, it is highly unlikely that the improvement in back pain noted on Dr. Troutt's chart is significant enough to justify repealing Ms. Evans' long-term disability benefits.

Moreover, back pain is only one of Ms. Evans' medical conditions. As described above, Ms. Evans suffers from numerous other significant medical problems. While Dr. Troutt focused on treating Ms. Evans' back and leg pain, Dr. Pica was responsible for treating Ms. Evans more broadly. Like Dr. Troutt, Dr. Pica indicated that Ms. Evans has not shown any improvement in her condition that would allow her to return to work. In fact, Dr. Pica very clearly informed Hartford that Ms. Evans is not capable of working at any position on a full-time or part-time basis when all of her physical ailments are considered. Dr. Pica's opinion was largely based on Ms. Evans' cellulitis, a condition Dr. Troutt was not treating. Thus, Dr. Pica's opinion and interpretation of Ms. Evans' limitations are more instructive than Dr. Troutt's.

Using the same medical records Dr. Pica used and without examining Ms. Evans, Hartford's reviewing doctors came to starkly different conclusions than Dr. Pica. They do not offer any supporting facts or medical reasoning for why their opinion should be counted higher than the opinion of Dr. Pica. Moreover, other than the one medical chart from Dr. Troutt, the Hartford physicians do not offer a cogent explanation of how Ms. Evans has improved from the time of her disability in 2004. Given Hartford's admission that Ms. Evans was disabled prior to 2008, this makes Hartford's determination appear arbitrary.

**B.**

Also weighing in Ms. Evans' favor is the SSA ALJ's determination that Ms. Evans is totally disabled. The ALJ was not at all conflicted in making her decision. Her decision was based on a review of primarily the same medical records and testimony presented to Hartford on

appeal. In fact, Hartford agrees that this determination was correct in 2007. Again, however, Hartford contends that new medical evidence shows that Ms. Evans is no longer disabled because of improvements in her condition. Aside from the medical chart from Dr. Troutt and the review of records conducted by Hartford's physicians, Hartford has offered no evidence of such an improvement. Thus, Hartford has not convinced the Court that its difference of opinion with the ALJ is reasonable and supported by substantial evidence.

## C.

Finally, Hartford places reliance on the letters it sent to Drs. Pica and Troutt that those doctors signed indicating Ms. Evans could perform certain tasks associated with a sedentary employment position. Dr. Pica's signature on the letter, however, was clearly taken out of context. She specifically told Hartford that she did not intend to indicate Ms. Evans was capable of holding a full or part-time position. Dr. Troutt also responded to the letter by listing Ms. Evans' limitations. As discussed, those limitations were essentially the same as when Ms. Evans was initially approved for disability. Therefore, the letters sent to Drs. Pica and Troutt cannot be the basis for a fair and reasonable determination that Ms. Evans is no longer disabled and eligible for benefits.

## IV.

On balance, the Court finds that Hartford's determination that Ms. Evans is no longer disabled was arbitrary and capricious. Hartford has offered no reasonably reliable evidence that Ms. Evans' condition has improved from the time that Hartford recognizes she was disabled. Ms. Evans' treating physicians agree that her condition has not significantly improved and that her limitations remain the same and will remain permanently. Additionally, the factors

annunciated by the Sixth Circuit as disfavoring Hartford are all present in this case: Hartford both made the decision regarding Ms. Evans' eligibility and would be the company paying her benefits; Hartford disagrees with the independent SSA ALJ's determination without sufficient cause; and Hartford relied almost exclusively on a review of Ms. Evans' records as opposed to an examination of her personally.  Considering all of these factors and the reasons discussed above, the Court determines that Hartford's decision was unreasonable and, therefore, arbitrary and capricious.

      The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record